IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RONDA S. DEATON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-302-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Ronda S. Deaton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-

step sequential process to evaluate a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born May 27, 1961, and was forty-seven years old at the time of the administrative hearing. (Tr. 28, 117). She has a high school education, certifications as a nursing assistant and medication assistant tech (Tr. 28, 153), and has past relevant work a child-care provider, housekeeper, food service line worker, and home health care worker (Tr. 39-40). The claimant alleges she has been unable to work since December 17, 2006 due to depression, asthma, emphysema, heart problems, and a back and neck injury. (Tr. 148).

**Procedural History**

On November 1, 2005, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 109-111, 117-119). Her applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 29, 2009. (Tr. 15-24). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work, *see* 20 C.F.R. § 404.1567(b), 416.967(b), *i. e.*, she could lift/carry 20 pounds occasionally and ten pounds frequently, stand/walk/sit for six hours in an eight-hour workday (with normal

-3-

breaks), stoop occasionally but avoid above-the-shoulder work, perform simple repetitive tasks, and have incidental contact with the public. (Tr. 19). The ALJ concluded that the claimant was not disabled because she could return to her past work as a housekeeper. (Tr. 23-24).

## Review

The claimant contends the ALJ erred: (i) by failing to consider all her impairments at steps two and three, including post-traumatic stress disorder, arthritis, chronic sinusitis, asthma, GERD, dizziness, fatigue, insomnia, paranoia, and schizophrenic disorder; (ii) by failing to consider the combined effects of all of her impairments at step four; (iii) by failing to properly consider the opinion of consultative examiner Dr. Minor W. Gordon, Ph.D., and opinions from various examining physicians; and (iv) by failing to properly evaluate her credibility. In support of her second contention, the claimant argues that the ALJ committed error at step four by failing to determine the demands of her past relevant work before concluding that she was still able to perform it. The Court agrees, and the decision of the Commissioner must therefore be reversed.

The relevant medical evidence shows that the claimant had the severe impairments of degenerative disc disease, chronic obstructive pulmonary disorder, depression, and anxiety, as well as nonsevere impairments of headaches, hypertension, and drowsiness. (Tr. 17-18). A March 2001 MRI revealed that the claimant had cervical spondylosis with disk degeneration and posterior bulging at the C4-5, C5-6 levels (Tr. 331, 421). She was referred to a neurologist in June 2001, for a consultation as to her chronic headaches and neck pain. (Tr. 341). The claimant was repeatedly treated for degenerative disc disease,

hypertension, allergies, sinusitis, schizoaffective disorder, and depression.  (Tr. 252, 258, 260, 267, 280, 282-83, 287-88, 290, 293, 295-96, 299-300, 432, 439, 443, 450 475, 478).

Dr. David Dean examined the claimant on July 26, 2007, and diagnosed her with hypertension, benign, without complications; COPD; brochial asthma; osteoarthopathy of the lumbosacral and cervical spine, with a full range of motion; and noncardiac chest pain related to periodic panic attacks.  (Tr. 207).  Dr. Dean recommended that the claimant undergo a mental status examination as to her depression, panic attacks, post-traumatic stress disorder, and "schizophrenia."  (Tr. 207).  Dr. Minor Gordon, Ph.D., performed a psychological examination on August 24, 2007, finding that the claimant appeared to be suffering from paranoid personality traits, as well as a mild to moderate level of anxiety and mild depression; that her behavior revealed difficulty communicating comfortably in a social circumstance secondary to both anxiety as well as paranoid personality traits, but that she would be able to relate to coworkers and supervisors on a superficial basis for work purposes; and that she would be able to perform some type of routine and repetitive task on a regular basis.  (Tr. 215-16).  Dr. Gordon assessed the claimant with a Global Assessment of Functioning ("GAF") score of 65 (Tr. 216) and noted that the claimant's "manner and attitude [we]re best described as suspicious," and that she "readily admitted to thinking people were against her."  (Tr. 215).  The next month, a state reviewing physician found that the claimant had moderate limitations in her activities of daily living, specifically she had moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, and interacting appropriately with

the general public (Tr. 228-234).  In May 2008, and in February and April 2009, the claimant was treated for, *inter alia*, post-traumatic stress syndrome.  (Tr. 440, 475, 489).

On April 27, 2007, the claimant requested a doctor's note from the Cherokee Nation Indian Clinic, stating that she needed it to say that she could not return to work for three months, so that she could collect a check from DHS.  (Tr. 278).  The Clinic advised her that they were unable to provide a letter.  (Tr. 278).  In October 2007, the claimant requested a release back to work from the Cherokee Nation Indian Clinic (which was provided), because her depression symptoms had improved.  (Tr. 252).  In February 2009, the claimant again requested a statement that she can only work part time, but the doctor's note states that it was explained to the claimant that there was not a "diagnosis documented in her chart that would justify me saying that."  (Tr. 491).

At the administrative hearing, the claimant testified that she has anxiety, asthma, bad allergies and migraines; that she can only stand fifteen minutes at a time before her lower back hurts and she gets a general ache all over, and that she has to sit down for fifteen minutes to an hour to relieve that pain; that she spends about four hours lying down during the day; that she has pain in her right shoulder from osteoporosis, and pain in her back from three slipped discs.  (Tr. 30-33).  She further testified that she can type with both hands, but that her left hand is hard to use and very slow; that she gets migraines two to three times a week, and has a "regular" headache every day; that some of her medications cause stomach problems; and that she has trouble sleeping at night, and frequently wakes up in the middle of the night.  (Tr. 34-37).  She also stated that lifting a gallon of milk caused her pain, and that she sewed, but could only cut quilt

squares for ten minutes before her neck and shoulder would hurt and she would get a headache or migraine. (Tr. 37-38). As to her depression, she testified that she does not feel like going anywhere, that she suffers from anxiety and has PTSD, and that she is on medication for the depression, but not for the anxiety. (Tr. 38). She stated that her depression could be triggered by a loss, but could also "come on out of the blue, out of nowhere, real hard and fast." (Tr. 38).

The claimant contends that the ALJ committed reversible error at step four of the sequential analysis, *inter alia*, by failing to determine the mental and physical demands of her past relevant work before concluding that she was still able to perform it. Step four has three distinct phases. The ALJ must establish the claimant's RFC, then determine the demands of her past relevant work (both physical and mental), and ultimately decide if her RFC enables her to meet those demands. *See, e. g., Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must specify his factual findings at each phase, *see id.* at 1023, and although the ALJ may *rely on* information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id.* at 1025.

As noted above, the claimant contends that the ALJ erred at phase one of step four because he failed to account for the effects of all of her impairments in formulating her RFC. But assuming *arguendo* that the ALJ *did* appropriately determine the claimant's RFC, the question nevertheless arises whether his step four analysis was somehow flawed at the second or third phases, *i. e.*, whether the ALJ properly determined the demands of the claimant's past relevant work at phase two, and whether the ALJ's conclusion that the

claimant could perform her past relevant work was properly supported by evidence.  On both points, the ALJ could consider "the claimant's ability to perform either . . . [t]he functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties . . . as generally required by employers throughout the national economy."  *Andrade v. Secretary of Health & Human Services,* 985 F.2d 1045, 1050 (10th Cir. 1993) *quoting* Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1.

     The ALJ questioned the VE about the exertional and skill levels of the claimant's past relevant work at the administrative hearing, and recounted the VE's testimony as to the job of housekeeper in his written decision.  (Tr. 23).  The ALJ thus made adequate findings about the general physical demands of the claimant's past relevant work.  *See Doyal v. Barnhart,* 331 F.3d 758, 761 (10th Cir. 2003) ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis. There was nothing improper about this. An 'ALJ may rely on information supplied by the VE at step four.'"), *quoting Winfrey,* 92 F.3d at 1025.  The ALJ did not, however, question either the claimant or the VE about whether the job of housekeeper required more than occasional stooping or above-the-shoulder work, which were the specific physical limitations in her RFC.  Nor did the ALJ inquire whether the housekeeper job required the performance of complex tasks or more than incidental contact with the public, which were the claimant's specific mental limitations.  *See, e. g., Winfrey,* 92 F.3d at 1024 ("When the claimant has a mental impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, *e. g.*, speed, precision,

complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."), *quoting* Soc. Sec. Rul. 82-62.  And because the ALJ elicited no evidence on these points, he did not make (nor could he have made) specific findings of fact thereon.

In response to hypothetical questions incorporating the claimant's limitations, the VE opined that someone with the claimant's RFC could perform her past relevant work as a housekeeper (Tr. 40-41).  The VE evidently found *implicitly* that the claimant could perform the specific mental and physical demands of the housekeeper job with her RFC, but the ALJ made no such findings *explicitly* in his written opinion; he simply stated in conclusory fashion that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of [the job of housekeeper], the undersigned finds that the claimant is able to perform it as generally performed."  (Tr. 22-23).  *See Frantz v. Astrue,* 509 F.3d 1299, 1304 (10th Cir. 2007) ("The ALJ's conclusory statement that '[t]he exertional and non-exertional requirements of this job [as a general clerk] are consistent with the claimant's residual functional capacity' is insufficient under *Winfrey* to discharge his duty to make findings regarding the mental demands of Ms. Frantz's past relevant work. This case is unlike *Doyal v. Barnhart,* 331 F.3d 758, 761 (10th Cir. 2003), where the ALJ quoted the VE's testimony approvingly in support of his own findings at steps two and three of the analysis. Here, there was no VE testimony, and no evidence of any kind, to establish the mental demands of Mr. Frantz's past relevant work and thus no evidence to support a finding that Ms. Frantz retains the mental RFC to work as a general

clerk."). Such a process, although arguably sufficient at step five, is nevertheless wholly inadequate at step four of the sequential analysis, as the *Winfrey* court explained in detail:

> At step five of the sequential analysis, an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform. This approach, which requires the VE to make his own evaluation of the mental and physical demands of various jobs and of the claimant's ability to meet those demands despite the enumerated limitations, is acceptable at step five because the scope of potential jobs is so broad.
>
> At step four, however, the scope of jobs is limited to those that qualify as the claimant's past relevant work. Therefore, it is feasible at this step for the ALJ to make specific findings about the mental and physical demands of the jobs at issue and to evaluate the claimant's ability to meet those demands. Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.

92 F.3d at 1025. The ALJ thus erred in this case not only in failing to make appropriate findings in the second phase of step four, but also in ceding decision-making authority to the VE in the third phase of step four. *See id.* at 1026 ("In the second phase, the ALJ failed to develop the record on, and to make the required findings about, the mental demands of plaintiff's past relevant work. This failure infected the third phase, where the ALJ abdicated his fact finding and evaluation responsibilities to the VE.").

Because the ALJ failed to conduct a proper step four analysis of the claimant's ability to perform her past relevant work, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should elicit evidence and make specific factual findings on the specific demands of the claimant's past relevant work as a housekeeper at phase two of step four, and determine

at phase three whether she can perform such work with her RFC. If the ALJ determines at step four that the claimant cannot perform her past work, he should then determine at step five what work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma